# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

ADAM GOODMAN, *et al*.,

    Plaintiffs,

v.

PLATINUM CONDOMINIUM
DEVELOPMENT, *et al*.,

    Defendants.

Case No. 2:09-CV-00957-KJD-RJJ

**ORDER**

    Before the Court is the Motion to Certify Class (#57) of Plaintiffs Adam Goodman, Jesse Bahksain, Evan and Francoise Cherry, Scott Heyden, and David Leon (collectively "Plaintiffs"). Defendants Platinum Condominium Development, LLC,  Marcus Management Las Vegas, LLC, and Marcus Hotels, Inc. (collectively "Defendants") filed a response (#61) to which Plaintiffs replied (#65).  Plaintiffs also filed a Motion to Strike Evidence Offered by Defendants in Opposition to Motion for Class Certification (#64) to which Defendants responded (#69).  Defendants filed a Motion to Dismiss Counts 2 Through 8 of the Third Amended Complaint (#78) to which Plaintiffs responded (#81) and Defendants replied (#85).  The Court rules on these motions together herein.

I.  Background

    This case arises out of the development and sale of condominium-hotel units in the Platinum Hotel and Spa on East Flamingo Road in Las Vegas (the "Platinum").  Defendant Platinum Condominium Development, LLC completed the Platinum in October 2006.  Beginning in January of 2004, potential purchasers were offered the chance to reserve units.  Four different units were

1  available to purchasers.  After these units suffered a precipitous drop in value, Plaintiffs filed this
2  lawsuit seeking recovery for various securities and fraud-based claims.

3     Plaintiffs filed their Amended Complaint as a "class action" as defined under 28 U.S.C. §
4  1332(d)(1)(B) in the Eighth Judicial District Court in Clark County, Nevada, on April 20, 2009.
5  Shortly thereafter, it was removed here pursuant to the Class Action Fairness Act ("CAFA") and 28
6  U.S.C. §§ 1453(b) and 1446.  On March 29, 2010 the Court dismissed Plaintiffs' federal securities
7  claims and all of non-statutory intentional fraud based claims (#30).  Plaintiffs then filed a Second
8  Amended Complaint (#31) on April 28, 2010 that repleaded their state law securities and fraud
9  claims but not their federal securities claims.  Plaintiffs also moved for class certification on behalf
10 of all individuals who purchased units in the Platinum.  Defendants moved to dismiss Counts Two
11 through Eight of the Second Amended Complaint. Before the Court ruled on that motion, Plaintiffs
12 moved for leave to file a Third Amended Complaint (#49) (the "TAC").  The Court granted Plaintiffs
13 leave to amend on March 31, 2011 and denied the Defendants' Motion to Dismiss the Second
14 Amended Complaint as moot (#71).  The TAC added Marcus Hotels, Inc. as a Defendant.

15    Plaintiffs aver that the marketing and sale of the units was fraudulent and constituted a sale of
16 securities in violation of state law.  Specifically, Plaintiffs allege that Defendants are liable for (1)
17 violation of N.R.S. 90.460; (2) violation of N.R.S. 90.570; (3) violation of N.R.S. 598, et seq.
18 (Nevada Deceptive Trade Practices Act or "NDTPA"); (4) Fraudulent Misrepresentation; (5)
19 Negligent Misrepresentation; (6) Fraud in the Inducement; (7) Fraudulent Concealment; and, (8)
20 violation of the Interstate Land Sales Full Disclosure Act; 15 U.S.C. § 1703(a)(2) ("ILSA").

21 II.  Motion to Strike

22    The Court first resolves the Motion to Strike Evidence Offered by Defendants in Opposition
23 to Motion for Class Certification of Plaintiffs (#64).

24    Fed. R. Civ. P. 32(a) permits a party to use deposition testimony from an earlier action
25 against another party at a trial or hearing only when, *inter alia*, the party was present at the deposition
26 or had reasonable notice of it, and it is "between the same parties, or their representatives or

1  successors in interest."  On a motion for class certification, the court may consider evidence that may

2  not be admissible at trial. See e.g. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (class

3  certification process not accompanied by the traditional rules and procedures applicable to civil

4  trials).  For example, affidavits are appropriate for determining whether a class should be certified.

5  Dukes v. Wal-Mart, 474 F.3d 1214, 1245 (9th Cir. 2007) (reversed on other grounds by Wal-Mart

6  Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011)).  Deposition testimony from a prior action that does not

7  comply with Fed. R. Civ. P. 32 can be used in the determination of motions that require support by

8  affidavits. Hoover v. Switlik Parachute Co., 663 F.2d 964, 966-67 (9th Cir. 1981) (summary

9  judgment motion); Microsoft Corp. v. Very Competitive Computer Products Corp., 671 F. Supp.

10 1250, 1254 n.2 (N.D. Cal. 1987) (allowed use of prior deposition in personal jurisdiction

11 determination because "[t]here is no need to require the party presenting the deposition testimony to

12 obtain an affidavit that reiterates the information given in the deposition.").

13       In their opposition to Plaintiffs' Motion to Certify Class, Defendants attach as exhibits

14 excerpts from the depositions of a number of witnesses in Baroi et al. v. Platinum Condominium

15 Dev. LLC, et al., No. 2:09-cv-00671-PMP-GWF (D. Nev.), another case pending in this district

16 against Defendants.  Defendants argue that these depositions are admissible for purposes of a class

17 certification motion because they are the equivalent of affidavits and also because Plaintiffs had

18 notice of the depositions, but did not appear.  Plaintiffs seek to exclude this evidence because the

19 depositions were not "between the same parties, or their representatives or successors in interest."

20 Fed. R. Civ. P. 32(a)(8).  Because the Court is not bound by the rules of evidence as it would be at a

21 trial, Defendants' use of the deposition is appropriate in determining the Motion to Certify Class.

22 Since the depositions "were made on personal knowledge and set forth facts that were admissible in

23 evidence... [they are] the equivalent of affidavits."  Hoover, 663 F.2d at 967.  Accordingly, they are

24 properly considered and the Motion to Strike is denied.

25

26

III.  Class Certification

Plaintiffs seek to certify as a class "all individuals who purchased one or more of the securities in the Platinum Hotel and Spa located in Las Vegas from Defendants" (the "Class").  (#57 at 2.)  Plaintiffs exclude from the Class Defendants, any parent, subsidiary of affiliate of Defendants, and their officers, directors, and employees, who are or have been employed by Defendants during the Class period, and any judicial officer who may preside over this cause of action.

A. Rule 23(a)

Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. Rule 23(a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) (quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233 (9th Cir.1996)).  The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 have been met. Id. A motion for class certification does not permit preliminary inquiry into the merits of the case.  United Steel v. ConocoPhillips, 593 F.3d 802, 808 (9th Cir. 2010) (quotations omitted).

1.  Practicality of Joinder

"The prerequisite of numerosity is discharged if the class is so large that joinder of all members is impracticable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). "[I]mpracticability does not mean 'impossibility,'" but simply that joinder of all class members must be difficult or inconvenient."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964).  The Supreme Court has cautioned that "[t]he numerosity

4

requirement requires examination of the specific facts of each case and imposes no absolute

limitations." General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n,

446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  Courts have certified classes of 39, 64,

and 71 members.  See Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.1982); see also

Mazza v. AM. Honda Motor Co., 254 F.R.D. 610, 617 (C.D.Cal.2008) ("As a general rule, classes of

forty or more are considered sufficiently numerous.").  Geographic diversity can also influence the

practicality of joinder.  In re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D.Cal.2005).

Defendants claim that Plaintiffs have failed to meet their burden to show that joinder is

impractical.  Defendants note that 41 purchases of Platinum units are currently litigating in another

action in this district (Baroi et al. v. Platinum Condominium Dev. LLC, et al. No. 2:09-cv-00671-

PMP-GWF (D. Nev.).  Further, Defendants argue that since the universe of potential class plaintiffs

is only 195 persons, and since absent members have significant financial incentive to pursue

individual actions, joinder is not practical and, class certification should be denied.  Defendants cite

several out-of-district cases which purportedly support this assertion.  Plaintiffs argue that potential

class members are spread across 21 states and the United Kingdom and that they are sufficiently

numerous.  Plaintiffs also argue that the cases cited by Defendants do not represent the prevailing law

of this circuit.  Plaintiffs are correct.  Ninth Circuit precedent indicates that a potential class of 195 is

adequately numerous and that the geographical diversity of the putative class members militates in

favor of class certification.  See e.g. Jordan at 669 F.2d 1319.  Accordingly, this element of Rule

23(a)(1) is satisfied.

### 2. Common Questions of Law or Fact

"Securities fraud cases involving a class of purchasers allegedly defrauded over a period of

time by similar misrepresentations satisfy the common question requirement."  In re Alco Int'l Group,

Sec. Litig., 158 F.R.D. 152, 155 (S.D. Cal. 1994) (citing Blackie v. Barrack, 524 F.2d 891 (9th

Cir.1975)).  Defendants do not dispute that Plaintiffs have met their burden to show putative class

1   members have at least some common questions of law or fact pursuant to Fed. R. Civ. Pro. 23(a)(2).

2   Accordingly, this requirement is met.

3                       3.  Typicality of Claims and Defenses

4          A plaintiff may represent a class if he demonstrates that he has been injured in the same

5   manner as the rest of the class, even if his claims are not "identical" to the claims of the entire class.

6   Stolz v. United Brotherhood of Carpenters and Joiners of America, Local Union No. 971, 620 F.

7   Supp. 396, 404 (D. Nev. 1985) (citing Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496,

8   505 (9th Cir. 1980)).  If the class representatives and members of the class "share a common issue of

9   law or fact," and "are sufficiently parallel to insure a vigorous and full presentation of all claims for

10  relief" then the typicality requirement is satisfied.  California Rural Legal Assistance v. Legal

11  Services Corp., 917 F.2d 1171, 1175 (9th Cir.1990).  Defendants does not dispute the typicality of the

12  class representatives.  The typicality requirement of Fed. R. Civ. Pro. 23(a)(3) is met.

13                      4.  Adequate Protection of the the Interests of the Class by Representatives

14         There are two conditions which must be met in order to satisfy the requirement that the

15  representative parties will fairly and adequately protect the interests of the class.  First, "the named

16  representative must appear able to prosecute the action vigorously through qualified counsel," and

17  "second, the representatives must not have antagonistic or conflicting interest with the unnamed

18  members of the class." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978);

19  See also Sosna v. Iowa, 419 U.S. 393, 403 (1975).  Defendants do not dispute that Rule 23(a)(4) is

20  satisfied.  Plaintiffs represent that no conflicts exist and provide evidence that counsel is competent.

21  This factor does not present a barrier to class certification.

22         B.  Rule 23(b)

23         In addition to the requirements, of 23(a), Plaintiffs must also demonstrate that the

24  requirements of Rule 23(b) are satisfied.

25  //

26  //

This section of the rule, added in 1966, provides that a class may be maintained if the plaintiffs show that class satisfies Rule 23(a) and, *inter alia*, if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

The Supreme Court explained that "[i]n adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover 'cases in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997). Given the "competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other, the Reporter for the 1966 amendments cautioned: 'The new provision invites a close look at the case before it is accepted as a class action....'" Id.

To find superiority, Courts should "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1780, at 562 (2d ed. 1986). The superiority inquiry is closely related to the question of whether common claims predominate because "[i]mplicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino v.

7

1   Carter-Wallace, Inc., 97 F.3d 1227. 1234 (9th Cir 1996) (citing 1 Newberg on Class Actions, §

2   4.25 at 4-86. (3d ed.1992)).  The inquiry under Rule 23(b) into whether common claims

3   predominate and make the class action a superior form of resolution is judged by a "far more

4   demanding" standard than that of Rule 23(a). Amchem Prods at 521 U.S. 623-24.

5        Class actions are often appropriate in securities cases.  Harris, 329 F.2d at 913.  However,

6   class actions are by no means appropriate in every case involving a security. See O'Neil v.

7   Appel, 165 F.R.D. 479, 507 (W.D.Mich.1996) (finding that class action is not a superior method

8   of adjudication in securities fraud class action where common questions did not predominate on

9   the issues of reliance, causation, and damages); Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 681

10  (N.D.Ohio 1995)) (Where individual hearings are required on questions of reliance, causation,

11  and damages, the case is "hardly the picture of judicial economy envisioned by Rule 23.");

12  Mechigian v. Art Capital Corp., 612 F.Supp. 1421, 1434 n. 4 (S.D.N.Y.1985) (noting that

13  "[g]iven the predominance of individual issues such as fraud, reliance, and damages, it is

14  axiomatic that a class action is not the superior method of proceeding in this case.").

15       Plaintiffs fail to satisfy the requirements of Rule 23(b)(3) in this case because they fail to

16  show that "questions of law or fact common to class members predominate and that a class

17  action is superior to individual litigation in more fairly and efficiently resolving the controversy."

18            1. Common Issue Regarding Sale of Unregistered Securities Claim

19       "If each class member has to litigate numerous and substantial separate issues to establish

20  his or her right to recover individually, a class action is not "superior." Zinser, 253 F.3d 1180,

21  1192. (Citing Dalkon Shield, 693 F.2d at 856; Walsh v. Ford Motor Co., 807 F.2d 1000, 1017

22  (D.C.Cir.1986); Haley, 169 F.R.D. at 654.)  However, not all issues need to be identical.  Blackie

23  v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an

24  individual question and does not defeat class action treatment.")

25       In this case, in order for any plaintiff to be entitled to recover for the securities related

26  claims, he or she will need to establish that the units are investment contracts.  This will require

8

1   Plaintiffs to prove three elements in relation to each plaintiff: 1) the investment of money; 2) a

2   common enterprise; and 3) success and profits derived significantly from the managerial efforts

3   others.  See Hocking v. Dubois, 885 F.2d 1449 (9th Cir. 1989); see also S.E.C. v. W.J. Howey

4   Co., 328 U.S. 293 (1946).

5          In this case, each potential class plaintiff maintained legal control over his or her unit.

6   Where the investor maintains legal control over his investment, satisfying the third prong of the

7   Howey test requires that a plaintiff "must show practical dependence, an inability to exercise

8   meaningful powers of control or find others to manage his investment." Hocking, 855 F.2d at

9   1460 (citations omitted).

10         Under Williamson v. Tucker, adopted by the Ninth Circuit, and recognized as the leading

11  case on the control issue, the Fifth Circuit held that where the investor is a general partner or

12  joint venturer, he must establish at least one of the following:

13          (1) an agreement among the parties leaves so little power in the hands of the
            partner or venturer that the arrangement in fact distributes power as would a
14          limited partnership; or (2) the partner or venturer is so inexperienced and
            unknowledgeable in business affairs that he is incapable of intelligently exercising
15          his partnership or venture powers; or (3) the partner or venturer is so dependent on
            some unique entrepreneurial or managerial ability of the promoter or manager that
16          he cannot replace the manager of the enterprise or otherwise exercise meaningful
            partnership or venture powers.
17
    Williamson v. Tucker, 645 F.2d 404, 424–25 (5th Cir. 1981).  Stated plainly, the Ninth Circuit
18
    has noted that the Williamson approach "simply requires that [the court] examine the economic
19
    reality of the investor's relation with the manager or promoter."  Hocking, 885 F.2d at 1461
20
    (citing McConnell v. Frank Howard Allen & Co., 574 F.Supp. 781 (N.D. Cal. 1983).
21
           As the Court noted in its March 29th, 2010 Order (#30), here Plaintiffs were not obligated
22
    under the purchase agreement to use Defendant Marcus Management as their specific rental
23
    program and were not obligated to rent their units at all, so the first Williamson factor is
24
    inapplicable. To prevail, Plaintiffs will have to show that each class member was so
25
    inexperienced or unknowledgeable as to be incapable of exercising his or her venture powers or
26

9

1  that he or she was dependent on some unique entrepreneurial or managerial ability of

2  Defendants.

3      Plaintiffs claim that the "determination of whether a security has been offered or sold

4  depends entirely on the seller's offering, not on the purchasers' conduct following the sale."

5  (Reply at 15).  But in this transaction the Plaintiffs maintained legal control over their

6  investments.   Defendants have demonstrated that at least some putative class members managed

7  their own units, some managed the units of other class members, and some hired third-party

8  property managers. (Opp. at 20.)  This conduct affects the economic reality of the investor's

9  relation with the management or promoter and is highly relevant to the determination of the

10 control issue as outlined in <u>Williamson</u>. <u>See</u> <u>Hocking</u>, 885 F.2d at 1461. Whether the offering

11 was a security is a dominant issue in this case.   The Court would have to determine the

12 relationship between each class member and Defendants on an individual basis.  This militates

13 against class certification since it is a substantial separate issue and would not promote judicial

14 economy.  <u>Zinser</u>, 253 F.3d at 1192.

15              2 Statute of Limitations

16     The applicable statute of limitations, N.R.S. 90.670, bars actions not brought "within the

17 earliest of 2 years after the discovery of the violation, 2 years after discovery should have been

18 made by the exercise of reasonable care, or 5 years after the act, omission or transaction

19 constituting the violation."  The units at issue were purchased between 2004 and 2006 and this

20 case was filed in December 2008.  Accordingly, valid claims must have been filed within two

21 years of when discovery should have been made by the exercise of reasonable care.  Defendants

22 argue that an individualized showing will be required to prove that each member of the putative

23 class is not barred from recovery by the statue of limitations. There are undoubtedly differences

24 between class members: some have previously been litigants in lawsuits about Las Vegas

25 condominiums, some are experienced property owners, and others are lawyers.  Plaintiffs assert

26

1  that the necessity for individual determination of statute of limitations compliance is an

2  inappropriate basis for denial of class certification.[1]

3        Plaintiffs are correct that the statute of limitations issue alone is an insufficient basis for a

4  denial of class certification, but it is clear that courts may consider it as a factor in determining

5  whether certification is appropriate.  Cameron v. E. M. Adams & Co., 547 F.2d 473, 478 (9th

6  Cir. 1976) (given a sufficient nucleus of common questions, "even if there exists questions of

7  individual compliance with the ... statute of limitations, they are not sufficient, on balance, to

8  negate the predominance of the common issues.).  The statute of limitations issue is insufficient

9  by itself to defeat class certification.  However, it is not at all clear that there is a "sufficient

10  nucleus of common questions" in this case.  Id.  The statute of limitations issue is yet another

11  which the Court will have to determine on an individual basis.  On balance, this weighs against

12  the superiority of proceeding as class action Plaintiffs.

13                      3  Amount of Damages and Other Litigation

14        Rule 23(b)(3) directs courts to consider "the extent and nature of any litigation

15  concerning the controversy already commenced by or against members of the class" and also "the

16  class members' interests in individually controlling the prosecution or defense of separate

17  actions."  Therefore, it is not only appropriate to consider whether each proposed class member

18  has the ability and incentive to promote an individual claim, but also whether some class

19  members have actually chosen to "go it alone."  Amchem Prods. at 521 U.S. 615.  The Supreme

20  Court noted that "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in

21

22        [1] Plaintiffs also argue that Defendants' failure to present any evidence of actual knowledge of the existence of
   the claims by any individual class member is fatal to Defendants argument here.  Plaintiffs claim that since Defendants'

23  failed to make this showing, whether class members exercised "reasonable care" should be determined by an objective
   standard on a class-wide basis. (Reply at 20 n. 17 (citing Kramas v. Security Gas & Oil Co., Inc., 672 F.2d 766, 770 (9th

24  Cir.1982).)  While the standard for the determination may be objective rather than subjective, the authority cited by
   Plaintiffs does not hold that an objective standard must be applied class-wide or that it is Defendants' burden to

25  demonstrate that class members had actual knowledge in order to argue that individual determinations of statute of
   limitations compliance may be necessary.  See Momot v. Mastro  2011 WL 1362096, 3 (D.Nev. 2011) (noting that

26  plaintiff who was an attorney had knowledge or access to fact that security was unregistered at time of signing of
   subscription agreement so as to bar his claim under N.R.S. 90.670).

1    which individual damages run high, the Advisory Committee had dominantly in mind vindication

2    of 'the rights of groups of people who individually would be without effective strength to bring

3    their opponents into court at all.'" Id. at 617.  See also Zinser at 253 F.3d 1191 (minimum claim

4    of $50,000 "does not argue persuasively for class certification"); Stoudt v. E.F. Hutton & Co.,

5    121 F.R.D. 36, 38 (S.D.N.Y. 1988) (where damages are significant litigants more likely to

6    prosecute own claims and, class action device is disfavored).

7        Here, Defendants present evidence that each of the named Plaintiffs are seeking damages

8    in excess of $200,000 (Opp. at 14, 17).  Further, Defendants have shown that out of a maximum

9    of 195 potential class members, 50 are currently involved in litigation.  (Oppo. at 5-6.)  The

10   putative class does not appear to be a "group[] of people who individually would be without

11   effective strength to bring their opponents into court at all." Amchem Prods., at 521 U.S. at 617.

12   It also appears that many potential class members have an interest in pursuing their own litigation

13   since over 25% of potential class members have already chosen to do so.  Examination of these

14   two factors listed in Rule 23(b)(3) militates against class certification.

15       The Supreme Court has made clear that it is a matter "of overriding importance [that]

16   courts ... be mindful that [Rule 23(b)] as now composed sets the requirements they are bound to

17   enforce." Amchem Prods., 521 U.S. at  620.  Plaintiffs fail to carry their burden to demonstrate

18   the requirements of Rule 23(b)(3) are satisfied and that "questions of law or fact common to class

19   members predominate and that a class action is superior to individual litigation in more fairly and

20   efficiently resolving the controversy."  Accordingly, this Court must deny class certification.

21   IV.  Motion to Dismiss

22           A. Legal Standard

23       Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for

24   "failure to state a claim upon which relief can be granted."  A properly pled complaint must

25   provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

26   Fed. R. Civ. P. 8(a)(2);  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule

1    8 does not require detailed factual allegations, it demands "more than labels and conclusions" or

2    a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937,

3    1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be

4    enough to rise above the speculative level." Twombly, 550 U.S. at 555.  Thus, to survive a

5    motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief

6    that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

7           In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to

8    apply when considering motions to dismiss.  First, the Court must accept as true all well-pled

9    factual allegations in the complaint; however, legal conclusions are not entitled to the assumption

10   of truth.  Id. at 1950.  Mere recitals of the elements of a cause of action, supported only by

11   conclusory statements, do not suffice.  Id. at 1949.  Second, the Court must consider whether the

12   factual allegations in the complaint allege a plausible claim for relief.  Id. at 1950.  A claim is

13   facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a

14   reasonable inference that the defendant is liable for the alleged misconduct.  Id. at 1949.  Where

15   the complaint does not permit the court to infer more than the mere possibility of misconduct, the

16   complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal

17   quotation marks omitted).  When the claims in a complaint have not crossed the line from

18   conceivable to plausible, plaintiff's complaint must be dismissed.  Twombly, 550 U.S. at 570.

19          B.  Analysis

20          Defendants move to dismiss the following causes of action: Second Cause of Action for

21   violation of N.R.S. §90.570, Third Cause of Action for violation of N.R.S. § 598 et seq. - (the

22   "Nevada Deceptive Trade Practices Act" or "NDTPA"), Fourth Cause of Action for Fraudulent

23   Misrepresentation, Fifth Cause of Action for Negligent Misrepresentation, Sixth Cause of Action

24   for Fraud in the Inducement, Seventh Cause of Action for Fraudulent Concealment, and Eighth

25   Cause of Action for violation of 15 U.S.C. §1703(a)(2) – also known as the "anti-fraud"

26   provision of Interstate Land Sales and Full Disclosure Act (ILSA)).

1                    1. Previous Denial of Dismissal

2          As an initial matter, Defendants previously moved to dismiss the First Amended

3   Complaint in its entirety, including the N.R.S. §90.570, NDTPA, Negligent Misrepresentation,

4   and ILSA claims (#13).  The Court denied Defendants' Motion to Dismiss with respect to these

5   claims (#30).  The Court has noted the Defendants' arguments for dismissal of these claims with

6   interest.  However, the appropriate mechanism for raising the recently decided cases and other

7   arguments made by Defendants with respect to these claims is a motion for reconsideration.  See

8   Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)

9   (motion for reconsideration appropriate to address a significant change in law or

10  misapprehension of controlling law).  Claims for violation of N.R.S. §90.570, violation of the

11  NDTPA, Negligent Misrepresentation, and violation of ILSA are not appropriately before the

12  Court and cannot be disposed of by way of this Motion to Dismiss.  Accordingly, the Court

13  addresses the dismissal of the Fourth, Sixth and Seventh causes of action (the "Fraud Claims").

14             2. Fraud Claims in Fourth, Sixth and Seventh Causes of Action

15         Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to state with

16  particularity in the complaint the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  To

17  satisfy this burden, the complaint "'must set forth more than the neutral facts necessary to

18  identify the transaction.'"  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (footnote

19  omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).[2]  The

20  United States Court of Appeals for the Ninth Circuit has defined "neutral facts" to mean the

21  "'time, place, and content of an alleged misrepresentation.'"  Id. at 993 n. 10 (quoting GlenFed,

22  42 F.3d at 1547–48).  In addition to the neutral facts, a plaintiff also must explain what is false

23  about a statement and why it was false when it was made.  Id. at 993.  The Ninth Circuit has

24  ――――――――――――――

25         [2] A portion of the GlenFed, has been superseded by the PSLRA 15 U.S.C. § 78u-4(b(2).  This has no relevance
    here and GlenFed is still valid for the points cited herein.

26                                              14

1  made it clear that in cases like this, where market conditions have deteriorated, "it is clearly

2  insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier

3  statement a falsehood."  GlenFed, 42 F.3d at 1548–49. In order to properly plead fraud, plaintiffs

4  must set forth an "explanation as to why the disputed statement was untrue or misleading when

5  made. This can be done most directly by pointing to inconsistent contemporaneous statements or

6  information (such as internal reports) which were made by or available to the defendants."  Id.

7        The Ninth Circuit has held that an actionable misrepresentation must relate to fact and

8  cannot be based "on an expression of opinion or a prediction." Bulgo v. Munoz, 853 F.2d 710,

9  716 (9th Cir. 1988)); see also Clark Sanitation, Inc. v. Sun Valley Disposal Co., 87 Nev. 338,

10  341-42 487 P.2d 337, 339 (1971) ("Nevada has recognized that expressions of opinion as

11  distinguished from representations of fact, may not be the predicate for a charge of fraud.").

12        Plaintiffs' Fraud Claims are based on the following averred misrepresentations or

13  omissions: (1) that purchasing the unit and participating in the program was a lucrative

14  investment; (2) that participation in the rental program would produce positive cash flow and/or

15  substantially cover mortgage payments; (3) that Platinum would rent rooms at rates comparable

16  to certain other hotels (4) that occupancy rates would be above 90%; (5) that average room rental

17  rates would be approximately $200-$400 per night; (6) what the square footage of certain units

18  would be when they were constructed; (7) that unit owners who participated in the rental

19  management program could use their units whenever they chose to.

20            a. Claims Based on Failure to Conduct Reasonable Due Diligence

21        Plaintiffs' Fraud Claims based on an alleged failure to conduct due diligence do not meet

22  the heightened pleading requirements of Rule 9(b).  Plaintiffs must plead that the allegedly

23  fraudulent statements were false when they were made. GlenFed, 42 F.3d at 1549.  Here

24  Plaintiffs claim the statements were false at the time they were made because Defendants failed

25  "to conduct reasonable due diligence by failing to take reasonable measures" prior to making the

26

15

1   statements.  Plaintiffs have not cited any authority supporting their contention that simply

2   pleading a lack of due diligence is sufficient to survive a motion to dismiss a fraud claim.[3]  An

3   allegation that Defendants should have been more careful does not meet the required pleading

4   standards.  See GlenFed, 42 F.3d at 1548–49 (Rule 9(b) "requires plaintiffs to set forth with

5   particularity those circumstances which *constitute* the fraud" (emphasis original)); Bulbman, Inc.

6   v. Nevada Bell,  108 Nev. 105, 111, 825 P.2d 588, 592 (Nev. 1992) (testimony that defendant

7   should have been "more careful" does not prove fraudulent intent).

8         The Ninth Circuit has upheld dismissal of a securities fraud claim premised on a

9   company's allegedly unrealistic prediction of when its drug would win FDA approval. See In re

10  Syntex Corp. Securities Litigation, 93 F.3d 922, (9th Cir. 1996) ("alleged deficiencies in the

11  testing procedures do not indicate that Syntex's prediction of an FDA approval date was false

12  when made;" "[n]othing in this case indicates that the company had knowledge contradicting its

13  ability to achieve FDA approval within two years").  See also Cundiff v. Dollar Loan Center,

14  LLC, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010) ("a misrepresentation as to future performance

15  cannot be negligent because such a statement is either fraudulent, i.e., the person never held that

16  intention at the time he made the statement, or it was not a misrepresentation at all, the person

17  simply later failed to perform as promised").

18        The TAC does not aver that Defendants knew the statements were false.  It does not aver

19  that Defendants knew they were making statements while lacking a sufficient basis for the

20  statements.  See Lubbe v. Barba, 91 Nev. 596, 599, 540 P.2d 115, 117 (Nev. 1975) (intentional

21  misrepresentation requires "knowledge or belief on the part of the defendant that the

22  representation is false-or, that he has not a sufficient basis of information to make it").  The basis

23

24        [3] Plaintiffs cite to an order on a motion to dismiss in the Baroi case (No. 2:09-cv-00671-PMP-GWF) proceeding before Judge Pro. The order is a single paragraph without any analysis stating that the decision was reached based on the

25  pleadings and papers which were before Judge Pro in that case.  The order in Baroi offers no support for Plaintiffs' position.

26

1  for Plaintiffs' complaint is simply that Defendants did not conduct reasonable due diligence prior

2  to expressing opinions and predicting that the investment would be "lucrative," that the Platinum

3  would be competitive with peer hotels, or that occupancy rates would be high.  As pled, this is an

4  insufficient legal basis for a fraud claim.

5     Plaintiffs have failed to allege that the following statements of the Defendants were false

6  when made: (1) that purchasing the unit and participating in the program was a lucrative

7  investment; (2) that participation in the rental program would produce positive cash flow and/or

8  substantially cover mortgage payments; (3) that Platinum would rent rooms at rates comparable

9  to certain other hotels (4) that occupancy rates would be above 90%; (5) that average room rental

10  rates would be approximately $200-$400 per night.  Accordingly, the Fraud Claims based on

11  these statements are dismissed.

12                  b.  Square Footage

13     Plaintiffs contend that the square footage of various units differs from what was

14  represented to potential buyers.  Defendants argue that these representations were made prior to

15  construction and that each contract was accompanied by disclaimers stating that square footage

16  was approximate and that "seller expressly reserves the right to change or deviate from the

17  Architectural Plans, and from the Unit Specifications, including changes and adjustments to the

18  floor plans, room dimensions and site plan as may be reasonably necessary to accommodate

19  structural and mechanical elements and to achieve reasonable design and construction

20  efficiencies." (TAC Ex. 8.)

21     Again, Plaintiffs fail to plead that the representations regarding square footage were false

22  when made.  Plaintiffs cannot sufficiently plead fraud by averring that "simply because the

23  alleged misrepresentation conflicts with the current state of facts the charged statement must

24  have been false." Glenfed, 42 F.3d at 1548.  Further, in  Gottlieb v. Close, 81 Nev. 38, 398 P.2d

25  248 (1965) the Nevada Supreme Court held that there was no fraud where the sole basis of the

26

1   complaint was a difference between the actual dimensions of a piece of real estate and an

2   estimate in the contract that was clearly identified as an approximation.  Plaintiffs' claims based

3   on representations about square footage are dismissed because Plaintiffs do not aver that these

4   statements were false when made and since the contracts made clear that the figures were

5   approximations.

6                                c. Statements About Use of Units

7            The TAC attaches at Exh. 2 an undated screenshot with no uniform resource locator

8   ("URL") purportedly of the Platinum webpage containing the alleged misrepresentation that

9   Plaintiffs could use their unit "whenever you'd like."  Defendants argue that the Court should

10  consider evidence beyond the pleadings showing that the alleged misrepresentation regarding use

11  of the unit appeared for the first time on Platinum's website for a few months *after* purchasers

12  signed their respective purchase agreements.  Specifically, Defendants have demonstrated that a

13  website archiving service available at http://web.archive.org shows that the alleged

14  misrepresentation appeared on the page no sooner than December 8, 2005 and no later than April

15  12, 2006.  Indeed, web.archive.org appears to be the very source of the screenshot Plaintiffs

16  attach to the TAC at Exh. 2.  Defendants argue that the Court can consider this evidence without

17  converting the Motion to Dismiss to a motion for summary judgment pursuant to Knievel v.

18  ESPN, 393 F.3d 1063, 1076 (9th Cir. 2005) (holding that documents central to Plaintiffs' claims

19  may be considered on a motion to dismiss without converting the motion to one for summary

20  judgment).

21          The Court need not consider this evidence to dismiss Plaintiffs' claims based on this

22  alleged misrepresentation.  To comply with Rule 9(b), Plaintiffs are required to state, *inter alia*,

23  the time, place, and content of an alleged misrepresentation.  Yourish, 191 F.3d at 993 (quoting

24  In re GlenFed  42 F.3d at 1548).  Plaintiffs' complaint broadly alleges that "the

25  misrepresentations were made immediately before purchasers signed their respective purchase

26

1    agreements in 2004 and/or 2005." (TAC ¶72.)  But Plaintiffs fail to state the specific time of the

2    alleged misrepresentation that purchasers could use their units whenever they chose since neither

3    the allegations in TAC nor Exh. 2 specify a date.  They also fail to state the place of the alleged

4    misrepresentation since Exh. 2 lacks a URL indicating its source.  This claim fails to meet the

5    heightened pleading requirements to successfully plead the Fraud Claims and accordingly, it is

6    dismissed.

7            3.  Allegations Against Marcus Hotels

8            To properly plead fraud against multiple defendants, Rule 9(b) "does not allow a

9    complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate

10   their allegations when suing more than one defendant ... and inform each defendant separately of

11   the allegations surrounding his alleged participation in the fraud.'"  Swartz v. KPMG LLP, 476

12   F.3d 756, 765 (9th Cir. 2007) (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F.Supp. 1437,

13   1439 (M.D.Fla.1998)).  To survive dismissal, a plaintiff must "'identif[y] the role of [each]

14   defendant[ ] in the alleged fraudulent scheme.'"  Id. (quoting Moore v. Kayport Package Express,

15   Inc., 885 F.2d 531, 541 (9th Cir.1989)).

16           Plaintiffs first named Marcus Hotels as a Defendant in their TAC.  Specifically, Plaintiffs

17   aver that Marcus Hotels, Inc. held itself out as the manager of the Platinum, and was directly

18   involved in the scheme when it "specifically participated in, reviewed, approved, authorized,

19   directly controlled and modified" sales scripts and promotional materials and exercised its actual

20   power to control sales agents and others.  (See TAC ¶¶ 27-34, 77-78, 102.)  Although many of

21   the allegations in the complaint border on conclusory, the Court cannot say that they fail to

22   identify the alleged role of Marcus Hotels or that they are insufficient as a matter of law.  See

23   Swartz 476 F.3d at 765 (complaint sufficient where it specified misconduct of individual

24   defendants).  While the Court has doubts about whether the claims against Marcus Hotels will

25   survive a more stringent standard of review, Plaintiffs have sufficiently pled Marcus Hotels'

26                                                      19

1   direct participation in relation to the remaining causes of action.  Accordingly, Defendants's

2   argument to dismiss Marcus Hotels fails.

3   V.  Conclusion

4           **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion to Strike Evidence Offered by

5   Defendants in Opposition to Motion for Class Certification (#64) is **DENIED**.

6           **IT IS FURTHER ORDERED THAT** Plaintiffs' Motion to Certify Class (#57) is

7   **DENIED**.

8           **IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss is **GRANTED** as

9   to the Fourth Cause of Action for Fraudulent Misrepresentation, Sixth Cause of Action for Fraud

10  in the Inducement, Seventh Cause of Action for Fraudulent Concealment and otherwise

11  **DENIED**.

12          DATED this 1st day of September 2011.

13

14

15          _____

16          Kent J. Dawson
            United States District Judge

17

18

19

20

21

22

23

24

25

26

20